IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ADAM T. SANCHEZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 22 C 628 |
| ) | |
| KILOLO KIJAKAZI, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Adam Sanchez seeks to overturn the denial of his application for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB). Sanchez claims that he is disabled because he suffers from rheumatoid arthritis, degenerative joint disease of the knees, bipolar disorder, and posttraumatic stress disorder (PTSD). An administrative law judge (ALJ) found that Sanchez's ailments constituted severe impairments. The ALJ went on, however, to find that Sanchez had the residual functional capacity (RFC) to perform sedentary work and ultimately concluded that there were jobs that he could perform that existed in significant numbers in the national economy. The ALJ thus determined that Sanchez did not qualify as disabled as of August 4, 2021, the date of the ALJ's decision. The Social Security Administration's Appeals Council denied Sanchez's request for review of the ALJ's decision.

Sanchez has filed suit to challenge the ALJ's decision. Sanchez contends that three aspects of the ALJ's decision were not supported by substantial evidence: (1) the

ALJ's evaluation of two medical opinions; (2) the ALJ's conclusion that Sanchez could sustain occasional interaction with coworkers and supervisors; and (3) the ALJ's assessment of Sanchez's symptoms.

For the reasons explained below, the Court concludes that the ALJ's decision was not supported by substantial evidence and accordingly reverses the decision and remands the case for further consideration.

## Background

Sanchez applied for SSI and DIB on June 11, 2019, claiming a disability onset date of May 30, 2019. The Court will summarize Sanchez's condition and ALJ Deborah M. Giesen's decision as relevant to this appeal. The following facts are undisputed except where otherwise noted.

Sanchez is a 44-year-old man who lives with his wife and children. Sanchez worked at a car dealership selling cars for several years until 2019, when he stopped working due to his health conditions. Sanchez had long-standing pain in his joints, and he was diagnosed with rheumatoid arthritis on May 26, 2019, when he exhibited a limited range of motion and swelling in his hands, ankles, and feet. He was referred for rheumatology treatment. In February 2020, a licensed clinical social worker diagnosed Sanchez with PTSD and bipolar affective disorder; Sanchez also reports a childhood bipolar disorder diagnosis.

Sanchez began treatment by rheumatologist Dr. Juan Schmukler in May 2019. X-rays taken shortly after this showed swelling in both his hands. In June 2019, Dr. Schmukler's treatment notes reflect that Sanchez had several swollen and tender joints, including his wrists and knees. In August, Dr. Schmukler noted that Sanchez had

lumbar tenderness but did not identify any swollen joints at that time.  In October, however, Dr. Schmukler observed that Sanchez "continues to do poorly" and was "unable to decrease prednisone below 10 [mg] daily due to worsening pain."  Admin. Rec. at 467.  The joints in his hands and wrists were tender and swollen.  Sanchez's treatment was "escalat[ed]" to adalimumab injections.  *Id.* at 470.  In a follow-up appointment the next month, Sanchez "felt much better but pain recurred, mostly on [his] left knee."  *Id.* at 472.  Although his joints were not swollen at that time, seventeen joints were tender.

From May 2019 through June 2021, Sanchez was also treated by his primary care physician, Dr. Jonathan Cone.  In May 2019, Dr. Cone prescribed a cane for Sanchez's rheumatoid arthritis.  For each visit during 2019, Dr. Cone's treatment notes reflected that Sanchez had joint tenderness, limited range of motion, edema in his hands, pain with gripping, and irregular gait.  In December 2019, Dr. Cone noted that Sanchez was "overall better" and was "[w]illing to wean" his Narco intake but still had joint swelling.  *Id.* at 563.  In June 2021, Sanchez's swelling had decreased, but the joints in his hands, shoulders, and left knee were still painful.

In November 2019, Dr. Schmukler completed the "Arthritis Residual Functional Capacity Questionnaire."  *Id.* at 438.  Dr. Schmukler opined that Sanchez had chronic rheumatoid arthritis affecting his knees, hands, and wrists that caused joint pain, stiffness, and fatigue.  In response to the question "how often during a typical workday is your patient's experience of pain or other symptoms severe enough to interfere with the attention and concentration needed to perform even simple work tasks," Dr. Schmukler answered "[f]requently."  *Id.* at 438 (emphasis omitted).  Dr. Schmukler

3

further stated that Sanchez can only stand for forty-five minutes and sometimes will need to take unscheduled breaks during a working shift.

In July 2019, Sanchez completed a function report. In the report, he stated that he cares for his children by "watch[ing] them to make sure they don't hurt themselves" and that his wife helps him by "cook[ing] and bath[ing] the kids," "feed[ing] them," and "do[ing] everything." *Id.* at 272. Sanchez reported that he cannot cook for himself and does not go outside alone because he cannot "drive or sit for too long (15 min) because of [his] stiff painful joints." *Id.* at 274. When he shops, he uses an assisted cart and his cane, in addition to receiving help from his spouse. *Id.* at 274. He stated that he had never been fired because of problems getting along with others. In April 2020, Sanchez provided another function report. Unlike his last report, this report indicated that he had been fired from a job because of difficulties working with others. Sanchez explained that he had "smack[ed]" a previous manager and had "hit or yelled" at others in several prior jobs. *Id.* at 300. Sanchez's spouse also completed a function report in May 2020, stating that she "take[s] care of him and the kids." *Id.* at 308. She indicated that Sanchez "doesn't get along well" with authority figures and had hit a coworker while working at Continental Nissan. *Id.* at 313.

At the initial level of review in September 2019, Sanchez's file was reviewed by state agency physician Dr. Prasad Kareti. Dr. Kareti opined that due to Sanchez's rheumatoid arthritis, he "should not perform fine/gross manipulation to [sic] frequently." *Id.* at 81.

In May 2021, Sanchez testified to the following at a hearing before the ALJ. He was terminated from his previous job, which the record reflects was at International

Imports, LLC, because he had been missing work from pain or doctor's appointments. His spouse "does most of the work" caring for their children, though he "help[s] out when [he] can." *Id.* at 49. He always uses the cane his doctor prescribed, and he can only walk for one and a half blocks. He has struggled with his mental health his entire life and consistently takes several medications for his mental health conditions. There is a forest preserve a few blocks from Sanchez's house. He stated that he has not walked in the forest preserve in two years, but he still drives there once a week to be alone. He also drives to his doctor's appointments or the grocery store about four times a month.

On August 4, 2021, the ALJ issued a decision denying Sanchez's SSI and DIB claims. The ALJ found that Sanchez's rheumatoid arthritis, degenerative joint disease of the knees, bipolar disorder, and PTSD were severe impairments. The ALJ nevertheless determined that Sanchez had the RFC to perform sedentary work with the following relevant limitations: "frequent fingering;" "simple, routine tasks;" and "occasional interaction with coworkers and supervisors." *Id.* at 22–23. Considering Sanchez's age, education, work experience, and RFC, the ALJ determined that "there are jobs that exist in significant numbers in the national economy that [Sanchez] can perform"—namely, sorter, inspector, and bench packer. *Id.* at 31.

When the Appeals Council denied Sanchez's request for review on December 3, 2021, the ALJ's decision became the final decision of the Commissioner of Social Security. *See Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015). Sanchez then filed this lawsuit seeking judicial review of the Commissioner's final decision. Sanchez asks the Court to reverse the ALJ's decision and remand for further proceedings. The

Commissioner of Social Security has moved for entry of judgment against Sanchez.

## Discussion

After exhausting administrative remedies, an applicant for Social Security benefits may seek review of a denial in federal district court. 42 U.S.C. § 405(g). "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.*

On review, the ALJ's findings of fact are conclusive if they are supported by substantial evidence. *See Biestek v. Berryhill*, 139 S.Ct. 1148, 1152 (2019). Substantial evidence is evidence that "a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014) (internal quotation marks omitted). "The court's role is not to reweigh evidence, but to determine whether the ALJ built an accurate and logical bridge between the evidence and the conclusion." *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (internal quotation marks omitted).

The ALJ followed the standard five-step evaluation process to determine whether Sanchez was disabled during the relevant period. *See* 20 C.F.R. § 416.920. The ALJ's assessment of Sanchez's RFC, which "drives the determinations at Steps 4 and 5," is most relevant to this appeal. *Mandrell v. Kijakazi*, 25 F.4th 514, 516 (7th Cir. 2022). The RFC is "defined as the most physical and mental work the claimant can do on a sustained basis despite her limitations." *Id.* (citing 20 C.F.R. § 404.1545(a)). At the fourth step, the ALJ evaluated whether Sanchez is still capable of performing his past relevant work, given his RFC. *See* 20 C.F.R. § 416.920(a)(4)(iv). After concluding he

could not, the ALJ proceeded to the fifth step and determined, based on his RFC and "age, education, and work experience," that "there are jobs that exist in significant numbers in the national economy that [Sanchez] can perform." Admin. Rec. at 31; *see* 20 C.F.R. § 416.920(a)(4)(v).

**A.      Medical opinions**

Sanchez contends that the ALJ erred in her evaluation of the medical opinions of Sanchez's treating rheumatologist Dr. Schmukler and state agency consulting physician Dr. Kareti.

First, Dr. Schmukler opined that Sanchez "could not satisfy the physical requirements of sedentary work and would require additional, unscheduled breaks during the day." Pl.'s Opening Mem. at 7. The ALJ found that Dr. Schmukler's opinion was only "partially persuasive" because it was "inconsistent with his own treatment notes" and "with the record as a whole." Admin. Rec. at 29. Sanchez argues that the ALJ selectively analyzed the medical record, failing to consider the evidence supporting Dr. Schmukler's opinion. "[A]n ALJ doesn't need to address every piece of evidence, but he or she can't ignore a line of evidence supporting a finding of disability." *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021); *see also Reinaas v. Saul*, 953 F.3d 461, 466 (7th Cir. 2020) ("An ALJ cannot simply cherry-pick facts supporting a finding of non-disability while ignoring evidence that points to a disability finding.") (internal quotation marks omitted).

The Court agrees with Sanchez that substantial evidence does not support the ALJ's decision to discount Dr. Schmukler's opinion. The ALJ inappropriately focused on certain portions of Dr. Schmukler's treatment notes without confronting the notes that

7

supported his opinion. In concluding that Dr. Schmukler's opinion was "inconsistent with his own treatment notes," the ALJ pointed to only one treatment note from November 2019 that did not show swelling. Admin. Rec. at 29. But although that treatment note did not reflect swelling, it did identify seventeen tender joints. Moreover, Dr. Schmukler's June 2019 and October 2019 treatment notes did show swelling, and there was significant other medical evidence of swelling, including x-rays and other doctors' examinations. *See Gerstner v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018) (remanding where the "ALJ fixated on select portions of [the treating physician]'s treatment notes and inadequately analyzed his opinions"); *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) ("An ALJ may not selectively discuss portions of a physician's report that support a finding of non-disability while ignoring other portions that suggest a disability.").

In determining that Dr. Schmukler's opinion was inconsistent with the record, the ALJ noted that "the medical records documented no synovitis, significant swelling, or any deformities of the joints on his physical examinations." Admin. Rec. at 30. It is unclear what the ALJ meant by "significant swelling," because, as explained above, the record does contain a good deal of evidence of swelling. In any event, the ALJ's opinion does not explain why the absence of these findings is inconsistent with Dr. Schmukler's opinion. "ALJs must rely on expert opinions instead of determining the significance of particular medical findings themselves." *Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018).

The Commissioner contends that because the ALJ discussed most of the medical records in a summary, the ALJ sufficiently assessed Dr. Schmukler's opinion.

8

Although "summaries are appropriate," *Gedatus v. Saul*, 994 F.3d 893, 901 (7th Cir. 2021), and "the ALJ need not discuss every piece of evidence in the record, [s]he must confront the evidence that does not support h[er] conclusion and explain why it was rejected," *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004); *see also O'Connor-Spinner v. Astrue*, 627 F.3d 614, 621 (7th Cir. 2010) ("An ALJ must explain why he does not credit evidence that would support strongly a claim of disability, or why he concludes that such evidence is outweighed by other evidence."). Unlike in *Gedatus*, the ALJ's summary of the medical record did not "explain[] her reasoning" for discounting Dr. Schmukler's opinion or rejecting the evidence supporting his opinion. *Gedatus*, 994 F.3d at 900. Although "[i]t is not a court's role to displace an ALJ's judgment by making [its] own findings about the facts," a court "cannot uphold an administrative determination that failed to explain the outcome adequately." *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021).

Furthermore, the ALJ improperly disregarded Dr. Schmukler's opinion that Sanchez's pain was severe enough to affect his concentration. The ALJ found this opinion unpersuasive because Dr. Schmukler "did not refer to abnormal mental findings" and "is not a psychologist or psychiatrist." Admin. Rec. at 30. But Dr. Schmukler is a rheumatologist and accordingly qualified to evaluate the pain caused by rheumatoid arthritis and its effects on his patient. Dr. Schmukler completed the "Arthritis Residual Functional Capacity Questionnaire," which appears to be intended to be completed by a rheumatologist, not a psychologist or psychiatrist. *Id.* at 438. The form specifically asks "[h]ow often during a typical workday is your patient's experience of pain or other symptoms sever enough to interfere with the attention and concentration

9

needed." *Id.* Additionally, the ALJ did not cite to any psychologist or psychiatrist opinion contradicting Dr. Schmukler's assessment of Sanchez's pain. *See Leach v. Berryhill*, No. 17 C 3409, 2018 WL 2388406, at *4 (N.D. Ill. May 25, 2018) (Kennelly, J.) (noting that the ALJ's decision to assign little weight to a treating physician's opinion because it was outside his expertise was "highly suspect" where "no specialist on record contradict[ed] [his] opinion" and "though a[] . . . specialist is likely in the best position to determine and administer treatment," the physician was "fully capable of evaluating" the claimant's limitations).

In sum, substantial evidence does not support the ALJ's decision to discount Dr. Schmukler's opinion. Although this is sufficient to require remand, the Court addresses Sanchez's additional contentions to facilitate further review.

Sanchez also argues that the ALJ erred in finding Dr. Kareti's opinion "unpersuasive." Admin. Rec. at 28. Dr. Kareti opined that Sanchez "could not perform fine/gross manipulation to [sic] frequently." *Id.* at 80–81. The ALJ disregarded this opinion because the limitation was "not stated in vocationally relevant terms." *Id.* at 28. And the ALJ noted that it was "accounted for" in any event by "limit[ing] him to lifting/carrying 10 pounds." *Id.* It is true, as the Commissioner contends, that Dr. Kareti's opinion is not a model of clarity. The reasoning the ALJ provides, however, does not establish "an accurate and logical bridge" to her conclusion to disregard the opinion. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (internal quotation marks omitted). First, as Sanchez points out, "frequently" is a vocationally relevant term. *See* SSR 83-10, 1983 WL 31251, at *6 ("'Frequent' means occurring from one-third to two-thirds of the time."). Dr. Kareti's opinion is plainly that Sanchez could not perform fine

10

and gross manipulation frequently, with the "to" likely intended to be "too" and perhaps redundant in any event. Although the Commissioner asserts that the inclusion of "to" makes the opinion "ambiguous" because "neither the regulations nor the Department of Labor use any qualification on 'frequently,'" Cmmr.'s Resp. Br. at 8, "if the ALJ believed that Dr. [Kareti]'s opinion was deficient, the ALJ should have sought additional clarification from Dr. [Kareti] before discounting it outright," *Paul v. Berryhill*, 760 F. App'x 460, 464 (7th Cir. 2019) (citing 20 C.F.R. § 416.919p).

Second, it is not apparent why limiting the weight Sanchez can lift and carry accounts for limitations in fine and gross manipulation. The Commissioner's response that "the mere act of lifting something necessarily involves using the fingers" illustrates the point. Cmmr.'s Resp. Br. at 9. If all lifting involves fine and gross manipulation, then merely reducing the amount of weight lifted would not account for the impairment. On remand, the ALJ should reassess her evaluation of Dr. Kareti's opinion, taking into account the other medical evidence relating to gross and fine manipulation.

**B.     Social interaction limitation**

Sanchez additionally contends that the ALJ erred in determining, as part of his RFC, that he can sustain "occasional interaction with coworkers and supervisors." Admin. Rec. at 22. The ALJ acknowledged that "[a]t a consultative examination, he reported being easily irritable and verbally aggressive." *Id.* at 26 (citing *id.* at 540). In concluding that Sanchez could nevertheless handle "occasional interaction with coworkers and supervisors," the ALJ primarily cites a July 2019 function report where Sanchez indicated "that he had never been fired due to problems getting along with others." *Id.* (citing *id.* at 277). But the ALJ failed to address Sanchez's subsequent April

11

2020 function report, where he stated that he had previously been fired for "difficulties getting along with others" and described previous altercations with coworkers and supervisors. *Id.* at 300. The ALJ also did not acknowledge Sanchez's spouse's report that Sanchez "had hit a coworker at Continental Nissan." *Id.* at 313. "[A]n ALJ may not ignore evidence that undercuts her conclusion." *Spicher v. Berryhill*, 898 F.3d 754, 757 (7th Cir. 2018); *see also Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014) (remanding where "the ALJ identified pieces of evidence in the record that supported her conclusion that [the claimant] was not disabled, but she ignored related evidence that undermined her conclusion").

In support of the ALJ's decision, the Commissioner points to various reports from physicians that Sanchez was "cooperative," "getting a response from his medications," and reported "improved anxiety and no mood swings,"[1] contending that the ALJ "based" her RFC finding on this evidence. Cmmr.'s Resp. Br. at 13–14. This is unpersuasive because the ALJ did not analyze any of this evidence with respect to the social interaction limitation in her RFC finding. Nor does evidence that Sanchez was "cooperative" with his physicians when seeking treatment from them have much to do with interactions with coworkers in a work setting. Even if the ALJ had relied on Sanchez's physicians' treatment notes, the ALJ's finding that Sanchez had never been fired for difficulties getting along with coworkers would still not satisfy the substantial evidence standard because the ALJ ignored the subsequent function reports that directly undercut it. *See Spicher*, 898 F.3d at 757. The Commissioner's contention that

---

[1] As the ALJ observed, Sanchez testified at the May 2021 hearing that he felt pressured to give positive reports during his telehealth visits because he was unable to attend the visits privately.

12

"the ALJ did not ignore those later reports," Cmmr.'s Resp. Br. at 14, because elsewhere in the opinion the ALJ cited other parts of the reports for different issues lacks merit.

The Commissioner reiterates that "the presence of contradictory evidence and arguments does not mean the ALJ's determination is not supported by substantial evidence." Cmmr.'s Resp. Br. at 15 (quoting *Gedatus*, 994 F.3d at 903). But, as explained above, "[a]n ALJ cannot simply cherry-pick facts supporting a finding of non-disability while ignoring evidence that points to a disability finding." *Reinaas*, 953 F.3d at 466 (internal quotation marks omitted). *Gedatus* is not applicable because the Seventh Circuit specifically noted that it was "not a case where an ALJ ignored evidence contrary to his conclusion." *Gedatus*, 994 F.3d at 901. Although the Commissioner argues that the court cannot "reweigh evidence," Cmmr.'s Resp. Br. at 15, here "the problem is not that the ALJ weighed the evidence in a certain way; it is that she cited only evidence favorable to her decision without discussing any contrary evidence." *Reinaas*, 953 F.3d at 467.

Lastly, the Commissioner argues that these reports were "directly contradicted" by Sanchez's earlier reports[2] and that "it was not improper for the ALJ to find their original statements more reliable." Cmmr.'s Resp. Br. at 14. It is true that such a

---

[2] The Commissioner also briefly notes that Sanchez did not testify at the hearing "to losing a job due to anger or violence." Cmmr.'s Resp. Br. at 14. Not only did the ALJ not make this point in her decision, but the Court does not perceive an inconsistency between Sanchez's testimony at the hearing and his July 2019 function report. The ALJ only asked why he was terminated from his last job, in response to which Sanchez did not mention difficulties with coworkers in his answer. But the record reflects his last job was with International Imports, LLC, and the incidents he and his spouse reported in their function reports occurred while he worked for other previous employers.

13

conclusion would not be improper. But the ALJ did not provide this reasoning in her opinion, "and thus [it] cannot be used here." *Larson v. Astrue*, 615 F.3d 744, 749 (7th Cir. 2010) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87–88 (1943)).

**C.      Sanchez's credibility**

Sanchez's final contention is that the ALJ erred in finding that his "'statements concerning the intensity, persistence, and limiting effects' of his symptoms were 'not entirely consistent' with the record." Pl.'s Opening Mem. at 12 (quoting Admin. Rec. at 26–27). A court "will overturn an ALJ's decision to discredit a claimant's alleged symptoms only if the decision is patently wrong, meaning it lacks explanation or support." *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017) (internal quotation marks omitted). "[A]n ALJ must adequately explain his credibility finding by discussing specific reasons supported by the record." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013). An "ALJ's unsupported credibility assessment provides by itself sufficient reason to remand." *Plessinger v. Berryhill*, 900 F.3d 909, 916 (7th Cir. 2018).

The ALJ first determined that Sanchez's "reported daily activities" were "not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." Admin. Rec. at 27. The Court agrees with Sanchez that the ALJ "overemphasized [Sanchez]'s daily living activities." *Ray v. Berryhill*, 915 F.3d 486, 491 (7th Cir. 2019). The ALJ opinion noted that Sanchez reported that "he takes care of his kids," "drives and shops by computer," and "walk[ed] at the forest preserve." Admin. Rec. at 27. But the ALJ disregarded Sanchez's statements in the same function report regarding limitations on those activities. For example, later in the same report where Sanchez indicates that he cares for his children, he states that his wife helps him by "feed[ing] them and do[ing] everything." *Id.* at 272. In describing that he drives, he

14

adds that he does not "go out alone" because he "can't drive or sit for" longer than fifteen minutes "because of [his] stiff painful joints." *Id.* at 274. When stating that he shops, he again further explains that he shops "with help from [his] wife and a handicap cart and [his] cane." *Id.* The Seventh Circuit has repeatedly remanded where the "ALJ ignored claimant's qualifications as to how he carried out daily living activities." *Lothridge*, 984 F.3d at 1234 (alterations accepted) (internal quotation marks omitted); *see also Ray*, 915 F.3d at 491 (remanding where "[t]he ALJ . . . overemphasized Ray's daily living activities"); *Reinaas*, 953 F.3d at 467 ("[T]he ALJ cited Reinaas's ability to use a chainsaw, mow the lawn, and care for his child but ignored his testimony about the pain and fatigue these activities cause him and his limitations with them."); *Carradine v. Barnhart*, 360 F.3d 751, 756 (7th Cir. 2004) ("The weight the administrative law judge gave to Carradine's ability to walk two miles was perverse: not only is it a form of therapy, but it is not a form of therapy available at work.").

The Commissioner contends that "the ALJ's failure to mention a few limitations on some of Plaintiff's activities, if wrong at all, was not so 'patently wrong' as to warrant reversal." Cmmr.'s Resp. Br. at 12 (quoting *Deborah M.*, 994 F.3d at 791). But in *Deborah M.*, the ALJ "correctly looked at Plaintiff's daily activities to see if they corroborated her pain claims, and she found that they did not." *Deborah M.*, 994 F.3d at 791. In this case, the ALJ "cherry-picked and overstated the evidence that she cited to support her residual functional capacity finding" by emphasizing Sanchez's daily living activities without "acknowledg[ing] and engag[ing] with[] the limitations with those tasks that [Sanchez] included in that same report." *Lothridge*, 984 F.3d at 1234. Although it may be true, as the Commissioner contends, that the "ALJ does not have to accept

15

uncritically whatever a claimant says," Cmmr.'s Resp. Br. at 12–13 (quoting *Dwayne O. v. Saul*, No. 17 C 9150, 2020 WL 354455, at *10 (N.D. Ill. Jan. 21, 2020)), the ALJ cannot ignore Sanchez's reported limitations on his daily activities when assessing his alleged symptoms, *see Craft v. Astrue*, 539 F.3d 668, 680 (7th Cir. 2008).

The Commissioner also argues that "the ALJ did not equate plaintiff's activities with the ability to work full-time" and instead found that Sanchez's "activities were incongruent with his allegations of disabling limitations." Cmmr.'s Br. at 11. "But without acknowledging the differences between the demands of such activities and those of a full-time job, the ALJ was not entitled to use [Sanchez]'s successful performance of life activities as a basis to determine that h[is] claims of a disabling condition were not credible." *Ghiselli v. Colvin*, 837 F.3d 771, 777–78 (7th Cir. 2016).

For purposes of remand, the Court also notes two other ways in which the ALJ's credibility assessment fell short. First, the ALJ discredited Sanchez's alleged symptoms because he "ha[d] not undergone any knee surgery." Admin. Rec. at 27. But the fact that Sanchez did not undergo surgery, without more, does not establish that Sanchez exaggerated his knee pain. The ALJ impermissibly drew this inference without citing any medical evidence suggesting that knee surgery would have been the proper treatment for Sanchez if his knee pain were as severe as he alleged. *See Myles v. Astrue*, 582 F.3d 672, 677 (7th Cir. 2009) (holding that "[t]he ALJ impermissibly 'played doctor'" where "[t]he ALJ decided, absent any medical evidence, that [the claimant]'s condition was less serious because it was treated only with oral medication and not with insulin therapy"). Second, the ALJ appeared in some places to rely on inconsistencies involving "trivial matters." *Beardsley v. Colvin*, 758 F.3d 834, 838 (7th Cir. 2014). For

16

example, the ALJ emphasized that Sanchez reported to his psychiatrist in 2020 that he walked in a forest preserve despite testifying at the May 2021 hearing that he had not walked in a forest preserve in two years. But the ALJ did not inquire into this inconsistency at the hearing, and "without some attempt by the ALJ to explore the supposed contradiction[]," it "do[es] not provide a sound basis for concluding that [Sanchez]'s report was inaccurate." *Id.* The apparent inconsistency may have been a simple mistake about dates on Sanchez's part.

The Commissioner's contention that the ALJ also supported her assessment by concluding that Sanchez's alleged symptoms were inconsistent with the medical evidence is irrelevant. Because "the main factors identified by the ALJ as informing h[er] negative assessment of [Sanchez]'s credibility were either improperly analyzed or unsupported by substantial evidence, the determination itself must be considered patently wrong." *Ghiselli*, 837 F.3d at 778–79. And, in any event, the Court is also remanding because the ALJ's evaluation of the medical opinions was not supported by substantial evidence. The ALJ's determination of the consistency between Sanchez's alleged symptoms and the medical evidence accordingly may change upon remand.

## Conclusion

For the reasons stated above, the Court denies the Commissioner's motion for summary judgment [dkt. no. 15] and grants Sanchez's request to reverse and remand the agency's decision. The Court directs the Clerk to enter judgment vacating the decision of the Social Security Administration and remanding the case for further

17

consideration consistent with the Court's decision.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: February 24, 2023